Rosemary B. GREENLAW,
Plaintiff–Appellant,

v.

H. Lawrence GARRETT, III, Secretary, Department of the Navy; B.J. McMillin; Richard B. Cheney, Secretary, Department of Defense, Defendants–Appellees.

No. 93–15308.

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 14, 1994[1].

Decided July 12, 1995.

---

4. We also reject as moot Berkeley's cross claim seeking to require AEPCO to post a bond pending appeal.

1. The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit Rule 34–4.

Rosemary B. Greenlaw, San Jose, CA, pro per, for plaintiff-appellant.

Beth McGarry, Asst. U.S. Atty., San Francisco, CA, for defendants-appellees.

Before: CHOY and NOONAN, Circuit Judges, and MARQUEZ,[2] District Judge.

MARQUEZ, District Judge:

Plaintiff Greenlaw appeals from the district court's Order granting Defendant's Motion to Dismiss. The issue raised by this Appeal is whether an employment discrimination claimant rejects an offer of full relief during administrative proceedings may file a civil action in the district court to seek relief on the claim of discrimination.

Greenlaw alleges that her former employer, the United States Department of the Navy (Navy) and her former supervisor, B.J. McMillin (McMillin), discriminated against her on the basis of sex. She charges that she and other female co-workers received job performance evaluations of "fully successful" as compared to male co-workers who received evaluation ratings of "highly successful." Only the male employees, rated "highly successful," received pay bonuses.

Originally, Greenlaw and the other women filed a class action complaint with the EEOC. When the EEOC dismissed the class suit, Greenlaw individually filed an action on July

2. Honorable Alfredo C. Marquez, Senior U.S. District Judge for the District of Arizona, sitting by designation.

19, 1990. She realleged the claim of discrimination related to her 1989 performance evaluation and added a claim of retaliation. Greenlaw alleged that in response to the class action suit, McMillin retaliated against her by including similarly unfavorable comments in a 1990 close-out personnel evaluation which was conducted when Greenlaw voluntarily transferred her employment from the Navy to the Department of Justice (DOJ). She transferred because the Department of Defense underwent reorganization in which certain employees, including McMillin, were reassigned. McMillin transferred to the Defense Logistics Agency (DLA).

Greenlaw's transfer to DOJ took effect on June 24, 1990, approximately one month before she filed the EEO action seeking recovery of the $1,150 pay bonus paid male employees, to have her employment record expunged, and $50,000 in damages for injuries related to McMillin's alleged retaliatory conduct. Upon her transfer DOJ began a security clearance investigation of Greenlaw. She alleges her employment and promotional opportunities at DOJ depended upon this clearance and alleges that during the security investigation, McMillin orally repeated to DOJ derogatory comments similar to those he previously included in Greenlaw's Navy performance evaluations. Specifically, Greenlaw alleges that McMillin informed DOJ that he would not recommend Greenlaw for a position involving trust or sensitivity. Prior to conclusion of the security investigation, on February 22, 1991, Greenlaw resigned from DOJ.

Greenlaw first made her allegations that McMillin continued his retaliatory reprisals against her after she transferred to DOJ in a letter submitted to the Navy on June 3, 1991. Greenlaw claimed she was unaware of the post-DOJ reprisals until April 24, 1991, when she received a copy of her security report which contained the oral comments made by McMillin to the DOJ regarding her security clearance. In this same letter, Greenlaw proposed to settle the matter for $32,585 in damages as compensation for lost wages [3] and for pain and suffering. She also asked for reinstatement of her employment with the Navy.

In her June 3, 1991 letter to the Navy, Greenlaw charged that McMillin's comments, both those written in her close-out evaluation and those orally made after her transfer to DOJ, jeopardized her security clearance, created a hostile work environment at DOJ and stymied her promotional opportunities at DOJ. Specifically, she informed the Navy that she lost her first 90–day promotion at DOJ because of McMillin's comments.

The Navy responded that the allegations raised in Greenlaw's letter were beyond the scope of her EEO Complaint and instructed her to file a separate and new action.[4] On June 14, 1991, the Navy made Greenlaw an "Offer of Full Relief." The Navy offered to: 1) modify the 1989 performance appraisal review to the "highly successful" rating received by Greenlaw's male co-workers; 2) to pay her the corresponding cash award of $1,150; and 3) to expunge from the close-out review all derogatory comments.

Greenlaw rejected the offer and the Navy canceled her Complaint pursuant to 29 C.F.R. § 1613.215(a)(7).[5] Greenlaw filed this

---

3. Upon transfer to DOJ, Greenlaw allegedly incurred a reduction in her annual salary from $33,875 to $32,121. Her June 3, 1991, letter to the Navy set out estimated back pay and related wage losses.

4. Subsequently, on August 12, 1991, Greenlaw filed the "new" complaint, but the Navy denied the claim as untimely because Greenlaw had failed to consult an EEO counselor regarding the "new" instances of discrimination, 29 C.F.R. § 1613.214(a)(i); correspondingly, she failed to file the claim within fifteen days of counseling, 29 C.F.R. § 1613(a)(ii).

The Navy also denied Greenlaw's claim because McMillin was no longer an employee of the Navy. Greenlaw refiled the grievance with DLA, which also denied the claim as untimely and because she was not and never had been a DLA employee.

5. 29 C.F.R. § 1613.215 provides in pertinent part:

> (a) The agency head or designee shall reject or cancel a complaint:
>
>     *     *     *     *     *     *
>
> (7) If the complainant refuses within 15 calendar days of receipt of an offer of settlement to accept an agency offer of full relief in adjustment of the complaint, provided that the agency's Director of Equal Employment Opportuni-

action in federal district court on April 22, 1992.[6] On December 10, 1992, the district court dismissed Greenlaw's claim after finding that Greenlaw's rejection of the Navy's "offer of full relief" was a failure by Greenlaw to exhaust her administrative remedies, a jurisdictional requisite for her action in federal court. Greenlaw appealed.

■ Jurisdiction exists pursuant to 28 U.S.C. § 1291 and this court reviews *de novo* the district court's dismissal for lack of jurisdiction. *Oscar v. University Students Co-op. Ass'n,* 965 F.2d 783, 785 (9th Cir.) (en banc), *cert. denied,* — U.S. —, 113 S.Ct. 655, 121 L.Ed.2d 581, and *cert. denied, Spinosa v. University Students Co-op. Ass'n,* — U.S. —, 113 S.Ct. 656, 121 L.Ed.2d 581 (1992); *Atkinson v. United States,* 825 F.2d 202, 204 (9th Cir.1987), *cert. denied,* 485 U.S. 987, 108 S.Ct. 1288, 99 L.Ed.2d 499 (1988).

■ In order to litigate a Title VII claim in federal district court, Greenlaw must have exhausted her administrative remedies, *Brown v. General Services Administration,* 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976), including regulatory[7] and judicially[8] imposed exhaustion requirements. She must have pursued her administrative claim with diligence and in good faith. *Vinieratos v. United States Air Force,* 939 F.2d 762, 771 (9th Cir.1991). A plaintiff may not cut short the administrative process prior to its final disposition, for upon abandonment a claimant fails to exhaust administrative relief and may not thereafter seek redress from the courts. *Purtill v. Harris,* 658 F.2d 134, 138 (3rd Cir.1981), *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3110, 77 L.Ed.2d 1365 (1983);

*See Rivera v. United States Postal Service,* 830 F.2d 1037, 1039 (9th Cir.) (claimant who withdrew his administrative claim prior to final disposition failed to exhaust administrative relief and claim was properly dismissed by the district court), *cert. denied,* 486 U.S. 1009, 108 S.Ct. 1737, 100 L.Ed.2d 200 (1987).

The issue before this court, one of first impression here, is whether the district court erred in finding that because Greenlaw rejected the Navy's certified "offer of full relief," she failed to exhaust her administrative remedies and could not thereafter press her claim before the judiciary. *Wrenn v. Dept. of Veterans Affairs,* 918 F.2d 1073, 1077 (2d Cir.1990), *cert. denied,* 499 U.S. 977, 111 S.Ct. 1625, 113 L.Ed.2d 721 (1991) *Frye v. Aspin,* 997 F.2d 426 (8th Cir.1993). *Wrenn* provides a bright line jurisdictional litmus test. After reviewing the agency's offer, if the court concludes a claimant was offered and rejected, "full relief," the court dismisses the action for lack of jurisdiction. A claimant failing the *Wrenn* test is absolutely barred from recovery. Under *Wrenn,* Greenlaw not only loses the right to seek judicial relief, but she is no longer entitled to the agency's offered "full relief." Here, the agency walks away relieved wholly of any liability for any wrongdoing.

In *Wrenn,* the Second Circuit confronted a litigious pro se claimant whose antics, involving forty-plus civil rights complaints filed in a multitude of circuits,[9] were described as wasting judicial resources and resulting in a "dead-weight social loss except for giving satisfaction to litigants who prefer court pro-

---

ty ... has certified in writing that the agency's written offer of relief constitutes full relief.

6. On October 16, 1992, Greenlaw amended her Complaint to remove Defendant McMillin from the Title VII action, and to add pendant state tort claims against him.

7. 29 C.F.R. § 1613.281 (1989); 42 U.S.C. § 2000e–16(c) (as amended 1991) provides for a civil action to be filed within 90 days of final action by an agency, or by the EEOC upon an appeal from such a decision by an agency. Civil actions may also be filed if after 180 days the agency or EEOC fails to take final action on the matter.

8. *Purtill v. Harris,* 658 F.2d 134, 138 (3d Cir. 1981), *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3110, 77 L.Ed.2d 1365 (1983).

*Vinieratos v. United States Air Force,* 939 F.2d 762, 768 n. 5 (9th Cir.1991) (judicially imposed exhaustion requirements are not jurisdictional, but are treated as a conditions precedent to suit which a defendant may waive or be estopped from asserting); *accord, Johnson v. United States Treasury Dept.,* 27 F.3d 415, 416 (9th Cir.1994) (federal regulation requiring complainant to seek EEO counselling within 30 days of adverse employment action is treated as a statute of limitation and is subject to waiver, tolling, and estoppel).

9. *Wrenn,* 918 F.2d at 1075, n. 1.

ceedings to administrative relief." *Id.* at 1078. Given this atmosphere, the Second Circuit reflected on the judicially elaborated Title VII exhaustion requirements of cooperation and good faith,[10] and concluded:

> The purpose of the good faith participation requirement is to give the administrative process an opportunity to work and to enhance the chances of administrative resolution. *It follows that a claimant who is offered full relief in the administrative process must either accept the relief offered or abandon the claim.* To allow claimants such as Wrenn to continue to pursue claims that have been fully remedied during the administrative process would frustrate the congressional policy favoring administrative resolution of complaints for no discernible reason.... [L]itigation is not a sport in which the hunter may release a trapped quarry for the thrill of further chase.

*Id.* at 1078–79 (emphasis added).

In *Wrenn,* the plaintiff applied for, but failed to obtain employment with the Department of Veterans Affairs as a temporary clerk-typist. The agency made an "offer of full relief" to hire him as a Clerk–Typist, Temporary; to give him full back pay and any seniority that he may have earned. Wrenn rejected the offer and demanded that he be hired as a permanent employee in grade GS–9 or higher, that he be granted full relief for willful denial of his rights, and that seniority be backdated to include previous federal employment and his combat service in South Vietnam. The offer in *Wrenn* was obviously "full relief," but the *Wrenn* court

failed to consider circumstances where an offer might be less clear cut.

■ Under Title VII an "offer of full relief" must be all the relief to which the claimant would be entitled to, assuming the claimant prevailed. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 419–422, 95 S.Ct. 2362, 2372–73, 45 L.Ed.2d 280 (1975). Under Title VII there are a series of potentially appropriate remedies available depending on the circumstances of each case. 42 U.S.C. §§ 2000e–5(g), 2000e–16(d).[11] Plaintiff is entitled to be made whole, *Id.* at 418, 95 S.Ct. at 2372, and equitable relief serves to address past discrimination as well as bar future discrimination. *Id.* It can be far from an easy task, even for the judiciary, to determine the relief required under the law.

■ Requiring a *pro se* litigant to make this legal assessment,[12] especially if combined with the risk of dismissal imposed by *Wrenn,* violates the policies and principles of Title VII. Congress created a remedial scheme under Title VII to serve the lay person. *Love v. Pullman Co.,* 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 (1972). Congress intended that Title VII proceedings be navigable by *pro se* claimants. *Stache v. Intern. Bricklayers Union,* 852 F.2d 1231, 1233–34 (9th Cir.1988), *cert. denied,* 493 U.S. 815, 110 S.Ct. 64, 107 L.Ed.2d 32 (1989). Although Congress provided for administrative relief, it intended that Title VII claimants have access to the courts and that the federal courts ultimately be responsible for enforcing civil rights. *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 56, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), *abrogated on*

---

**10.** The Second Circuit considered the following cases: *Munoz v. Aldridge,* 894 F.2d 1489, 1492 (5th Cir.1990) (good faith cooperation by claimant statutorily required for 180 days; thereafter, claimant may proceed before judiciary); *Edwards v. United States Army,* 708 F.2d 1344, 1347 (8th Cir.1983) (claimant must cooperate in administrative investigation by making specific allegations), *accord Johnson v. Bergland,* 614 F.2d 415, 417 (5th Cir.1980) (administrative claim was properly canceled for claimant's failure to cooperate); *Jordan v. United States,* 522 F.2d

1128, 1133 (8th Cir.1975) (claimant must provide information necessary to the investigation).

**11.** Section 102 of the Civil Rights Act of 1991 provides for compensatory and punitive damages which further complicates damages assessments in Title VII cases.

**12.** The definition of "full relief" is provided by regulation, 29 C.F.R. §§ 1613.215(a)(7), 1613.271; therefore, what constitutes full relief is ultimately a legal question to be determined by the court.

*other grounds, Gilmer v. Interstate/Johnson–Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). After proceeding administratively, a claimant is entitled to a trial *de novo* in federal court, meaning a trial on the merits; not *de novo* review of an administrative record. 42 U.S.C. § 2000e–16(c); *Chandler v. Roudebush,* 425 U.S. 840, 863–64, 96 S.Ct. 1949, 1960–61, 48 L.Ed.2d 416 (1976).

■ Congress passed the Equal Employment Opportunity Act (EEOA) to bring federal employees such as Greenlaw within the rubric of Title VII. *Clark v. Chasen,* 619 F.2d 1330, 1334 (9th Cir.1980). By adopting, the EEOA, Congress intended to minimize differences between private and federal employees, especially judicial barriers of sovereign immunity and administrative exhaustion faced by federal employees. *Id.* (citing S.Rep. No. 415, 92d Cong., 1st Sess. 16 (1971); H.R.Rep. No. 238, 92d Cong., 1st Sess. 23 (1971); U.S.Code Cong. & Admin.News 1972, pp. 2137, 2158). In *Clark,* this circuit specifically rejected extension of judicial exhaustion requirements of administrative cooperation. The court refused to differentiate between federal and private-sector employees and held that extending jurisdictional burdens beyond those specifically designated by statute would upset the balance struck by Congress between administrative interests and interests in eradicating employment discrimination. *Id.*[13] *Wrenn* accomplishes what *Clark* refused to do.[14] *See e.g., Long v. Ringling Bros.–Barnum & Bailey Shows Inc.,* 9 F.3d 340, 341–343 (4th Cir.1993) (private-sector employee need only meet statutory jurisdictional requisites to file action in district court; *Wrenn* does not apply to private-sector employee who rejects offer of full relief, employee is entitled to trial *de novo* ).

■ Since laypersons initiate the administrative process for resolving employment discrimination complaints, the procedural requirements for Title VII actions are "neither interpreted too technically nor applied too mechanically." *Ong v. Cleland,* 642 F.2d 316, 319 (9th Cir.1981) (quoting *Richerson v. Jones,* 572 F.2d 89, 96 (3rd Cir.1978) (citing as in *accord, Clark,* 619 F.2d at 1332 n. 7; *Ramirez v. National Distillers & Chemical Corp.,* 586 F.2d 1315, 1321 (9th Cir.1978))). Procedurally, a Title VII complainant must seek counselling within 30 days of an alleged violation, 29 C.F.R. § 1613.214(a)(i), and within 15 days after completing counselling, complainant must file a formal EEO complaint with the agency, 29 C.F.R. § 1613.214(a)(ii). Within 30 days of receiving notice of final action,[15] an employee "if aggrieved by the final disposition of his complaint ... may file a civil action...." 42 U.S.C. § 2000e–16(c). The regulations provide that if a certified offer of full relief is rejected by the claimant, the agency may cancel the complaint. 29 C.F.R. § 1613.215(a)7. Upon cancellation,[16] the agency must notify the claimant that he or she is entitled to file an action in federal court, 29 C.F.R. § 1613.281(a), or that claimant may first file an appeal with the EEOC before proceeding with a civil action. 29 C.F.R. § 1613.233. The jurisdictional bar

---

**13.** In *Clark,* the court considered the 180 day period statutorily set for administrative adjudication of a complaint. The court held that after 180–days pass, if there is no administrative resolution of a claim, complainant may stop cooperating and terminate administrative resolution of his or her claim without being subject to dismissal for failure to exhaust and lack of jurisdiction. *Accord, Charles v. Garrett,* 12 F.3d 870, 874 (9th Cir.1993).

**14.** *See Ross v. United States Postal Service,* 696 F.2d 720, 722 (9th Cir.1983) (*Clark* establishes that federal employees are not subject to more jurisdictional prerequisites than private-sector employees).

**15.** A decision shall be final only when a determination is made on all of the issues in the complaint, including whether or not to award attorney fees or costs. 29 C.F.R. § 1613.281, *but see* n. 16.

**16.** Cancellation pursuant to § 1613.215 is not made on the merits, but serves as the agency's final action for purposes of triggering notice to a claimant regarding the commencement of time limits for filing civil actions under 42 U.S.C. § 2000e *et seq.* 29 C.F.R. § 1613.215(b).

imposed under *Wrenn* directly conflicts with the statutory and regulatory provisions for judicial access and stands in stark contrast to the agency's cancellation notice which assures claimants of their right to sue.

*Wrenn's* inconsistency with the policies and principles of Title VII, the statutory and regulatory framework of Title VII, and Ninth Circuit law, provides the basis for its rejection. Ample alternatives exist by which a court can address issues of judicial economy, frivolous claims, and litigious complainants. Rejecting *Wrenn* does not affect previous decisions by this court that abandonment or failure to cooperate in the administrative process prevents exhaustion and precludes judicial review. These cases are distinguishable: they involve claimants who after initiating administrative resolution of a claim abandon the process midstream, prior to final disposition of the matter;[17] claimants who attempt to simultaneously pursue administrative and judicial actions;[18] and claimants who fail to cooperate in the administrative process to a degree where the smooth functioning of the process is impeded.[19]

The district court's dismissal of Greenlaw's claims related to her EEO Complaint filed July 19, 1990, (Counts 1 and 2), is reversed and the matter remanded. In light of the viability of Counts 1 and 2, the district court should reconsider the dismissal of those claims raised in Greenlaw's June 1991 letters to the Navy and subsequently filed as a separate action on August 12, 1991, (Counts 3 and 4). The district court should consider the doctrine of continuing violations which draws within the ambit of a Title VII claim all conduct occurring before and after the filing of the EEO charge, providing the conduct is "like or reasonably related to" the events charged. *Sosa v. Hiraoka*, 920 F.2d 1451, 1456–57 & n. 2 (9th Cir.1990).

■ Exhaustion depends upon the "fit" between the administrative claim, the investigation and any subsequent allegations. *Ong*, 642 F.2d at 318. "Fit" is said to exist:

> When an employee seeks judicial relief for incidents not listed in his original charge to the [administrative agency], the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the [agency] charge, including new acts occurring during the pendency of the charge before the [administrative agency].

*Id.* (alteration in original) (quoting *Oubichon v. North American Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir.1973)). The district court should assess which subsequently claimed damages, if any, "fit" within the confines of Greenlaw's administrative claim that Appellees retaliated against her by making derogatory performance evaluations.[20]

This matter is remanded to the district court for further proceedings. It is for the district court to consider whether or not Greenlaw is entitled to relief under Title VII and if so, to determine what relief she is due.

---

17. *Vinieratos v. United States Air Force*, 939 F.2d 762 (9th Cir.1991); *Rivera v. United States Postal Service*, 830 F.2d 1037 (9th Cir.), *cert. denied*, 486 U.S. 1009, 108 S.Ct. 1737, 100 L.Ed.2d 200 (1988).

18. *Purtill v. Harris*, 658 F.2d 134 (3rd Cir.1981), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3110, 77 L.Ed.2d 1365 (1983).

19. *Johnson v. Bergland*, 614 F.2d 415 (5th Cir. 1980); *Jordan v. United States*, 522 F.2d 1128 (8th Cir.1975).

20. For example, Greenlaw included allegations in her June 3, 1991 letter that McMillin had orally conveyed to DOJ the same type of derogatory statements as those placed in her written performance evaluations, which are the subject of her administrative claim. Further, she speci-

fied that because of McMillin's retaliatory conduct she did not obtain her first 90-day promotion at DOJ, and she ultimately left civil service because she believed her career opportunities had been consequently foreclosed. Based on the limited record before the court, arguably, damages related to these allegations fit within Greenlaw's administrative claim of retaliatory reprisals. *See e.g., Snedigar v. Sec. of Navy*, 1993 WL 317431, *3 (N.D.Cal., August 13, 1993) (original complaint focused on letter of reprimand, but also contained allegation of ongoing harassment); *accord, Ellzey v. Espy*, 1995 WL 6277 at *3 (E.D.La. January 6, 1995) (court had jurisdiction over constructive discharge claim because it was reasonably related to administrative claim of retaliation).

Dismissal of Greenlaw's state tort claims against McMillin is affirmed. These claims are preempted by the Civil Service Reform Act (CSRA). *Saul v. United States,* 928 F.2d 829 (9th Cir.1991). Under Title VII there is no personal liability for employees, including supervisors such as McMillin. *Miller v. Maxwell's Intern. Inc.,* 991 F.2d 583, 587–88 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994).[21]

AFFIRMED IN PART, REVERSED AND REMANDED.

---

**21.** Appellees submit that the Secretary of Defense is not a proper party to Greenlaw's action because she was never an employee of DLA. This issue was not raised below and will not be addressed here, except to note that the EEOC held, "If the complaint was filed in a timely fashion, the agency with which complainant was employed would have been immaterial because Title VII seeks to remedy discrimination in employment, and it could have made the [DLA] the responsible party." (Appeal No. 01920755, Decision of April 1, 1992 at p. 3; Excerpts of Record at Exhibit B, p. 13.)