Phillip D. PUGH, Plaintiff,

v.

Robert A. MCDONALD, in his official capacity as Secretary, Department of Veterans Affairs, Defendant.

1:16–cv–01030

United States District Court, M.D. North Carolina.

Signed July 21, 2017

Carena B. Lemons, The Lemons Law Firm, PLLC, Durham, NC, for Plaintiff.

Joan Brodish Childs, U.S. Attorney's Office, Greensboro, NC, for Defendant.

## MEMORANDUM ORDER

THOMAS D. SCHROEDER, District Judge.

Before the court is Plaintiff Phillip D. Pugh's motion to amend his complaint alleging employment discrimination. (Doc. 17.) For the reasons set forth below, the motion will be denied.[1]

## I. BACKGROUND

Pugh is employed at the Veterans Affairs ("VA") Medical Center in Durham, North Carolina, as a Blind Rehabilitation Specialist. (Doc. 20–1 ¶ 3.) He alleges that the VA has engaged in a variety of discriminatory practices against him as far back as 2008, leading him to contact an Equal Employment Opportunity ("EEO") counselor at the VA's Office of Resolution Management ("ORM") on three separate occasions.

Pugh first contacted an EEO counselor on July 16, 2012, accusing two supervisors—Sharon Fekrat, Chief of Ophthalmology, and Kuruvilla Kurian, Administrative Officer for the Eye Clinic—of discrimination and harassment from 2008 to 2012 based on his race (African American), age (58), and disabilities (blindness and morbid obesity).[2] (Doc. 2 at 3–7.) Pugh filed a complaint with the VA's ORM on October 24, 2012. (Doc. 20–1 ¶ 5.) On May 5, 2016, after an internal investigation, the VA

issued its Final Agency Decision, finding no discrimination. (Doc. 2 at 17; Doc. 20–1 ¶ 6.) Pugh then received a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC") on May 9, 2016. (Doc. 2 at 17.) He filed the present lawsuit on August 5, 2016, based on the allegations set forth in this first EEO complaint.

On January 28, 2016—after he had filed his first EEO complaint but before filing this lawsuit—Pugh contacted an ORM counselor and reported additional harassment. (Doc. 20–1 ¶ 8.) These allegations became the basis of his second EEO complaint, which was filed on March 3, 2016. (Id. ¶ 9.) Pugh's allegations were directed at the actions of Willette Yarborough, Assistant Chief of Human Relations, and Jeff Kager, Chief of the Library Service, whom Pugh accused of discriminating against him between December 2015 and February 2016 on the basis of his disabilities and retaliating against him for prior EEO activity. (Doc. 18–1; Doc. 20–1 ¶ 9; Doc. 20–4 at 2.) Pugh sought to amend this second EEO complaint on two occasions. His first attempt, dated September 12, 2016, was partially successful, adding allegations to support his claims for harassment. (Doc. 20–6.) The ORM denied his second attempt, dated January 30, 2017, however, as it had already concluded its investigation of the underlying EEO complaint. (Doc. 20–7.) Pugh subsequently filed a hearing request with the EEOC on February 10, 2017 (Doc. 20–8), which issued a notice of receipt and scheduled an initial conference for October 24, 2017 (Doc. 20–9).

When the ORM denied Pugh's second request to amend his second EEO complaint, it considered those claims as a new and separate complaint. (Doc. 20–7 ¶ 4.) This became Pugh's third EEO complaint,

---

1. Pugh's motion to deem his motion to amend as timely filed (Doc. 19) is granted.

2. Pugh's blindness is caused by retinopathy. (Doc. 2 at 3–4; Doc. 17–2.)

with an initial contact date of January 30, 2017. (Id.) This complaint alleges that he was subjected to a hostile work environment based on his disabilities and in retaliation for past EEO activity. (Doc. 20–1 ¶ 15; Doc. 20–7 ¶ 3.)

In his motion before the court, Pugh seeks to amend his complaint to add allegations from his second and third EEO complaints. The motion is briefed and ready for decision.

## II. ANALYSIS

■■■ Federal Rule of Civil Procedure 15(a) provides that a party may amend his pleading once as a matter of course within twenty-one days after serving it; or if the pleading is one to which a responsive pleading is required, the party may amend the pleading within twenty-one days after service of a responsive pleading or motion. Fed. R. Civ. P. 15(a)(1). In all other cases, a party may amend his pleading only with the opposing party's written consent or leave of court, which should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). The decision to grant or deny a motion to amend is within the discretion of the district court. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). "[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986). A motion to amend a complaint is futile "if the proposed claim would not survive a motion to dismiss." James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996).

The Secretary argues that Pugh's motion should be denied because any amendment would be futile, as Pugh cannot advance his proposed claims in this court while he simultaneously advances them

through the EEOC. (Doc. 20 at 7–8.) The court agrees.

■■■ The filing of an administrative charge "is not simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." Chacko v. Patuxent Inst., 429 F.3d 505, 510 (4th Cir. 2005). A plaintiff alleging employment discrimination on the basis of race, age, disability, or in retaliation for prior EEOC involvement must exhaust his or her remedies at the administrative level, with limited exceptions. See 29 U.S.C. § 626(d) & 794a(a)(1); 42 U.S.C. §§ 2000e–5(b), 2000e–16, & 12117. This requirement applies to both private-sector and federal employees. Laber v. Harvey, 438 F.3d 404, 415 (4th Cir. 2006).

Because Pugh is a federal employee, he must first bring his claims to the agency employing him. Id. at 416. The agency then must conduct an investigation of the complaint and complete it within 180 days of the filing, barring certain exceptions not applicable here. 29 C.F.R. §§ 1614.108(a)–(e). Within that same time, the agency must provide the complainant a copy of the investigative file, or where a complaint was amended, within the earlier of 180 days of the last amendment to the complaint or 360 days of the filing of the original complaint. Id. § 1614.108(f). The agency must also give notice that within 30 days of receipt of the investigative file, the complainant can demand a hearing and decision from an administrative judge or request an immediate final decision from the agency. Id. If the agency does not provide this notice timely, it must issue a written notice to the complainant that it has been unable to complete its investigation within the time limits and estimate a date by which the investigation will be completed. Id. § 1614.108(g). The notice must explain that if the complainant does not want to wait until the agency completes its investi-

gation, he may submit a written request for a hearing to the EEOC or file a civil action in U.S. District Court. Id. §§ 1614.108(g)–(h). If the complainant elects to await agency action and the agency completes its investigation and finds no discrimination, it will issue a final agency decision to that effect, see id. §§ 1614.108–10, which the complainant may appeal, id. § 1614.401(a).

After the VA failed to complete its investigation of Pugh's second EEO complaint within 180 days,[3] Pugh had the option of directly petitioning the EEOC for a hearing or filing a civil action. Id. §§ 1614.108(g)–(h). Pugh requested the appointment of an EEOC administrative judge, with whom the claim remains pending. (Doc. 20–8.)

 In spite of that election, Pugh now wishes to circumvent the ongoing EEOC process and adjudicate the claims set forth in his second and third EEO complaints in this court. But without exhausting his administrative remedies, this court does not have jurisdiction to resolve those claims. Davis v. N.C. Dep't of Corr., 48 F.3d 134, 137–40 (4th Cir. 1995) ("Before a federal court may assume jurisdiction over a claim under Title VII, however, a claimant must exhaust the administrative procedures."); Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009) (a plaintiff's failure to exhaust administrative remedies deprives federal courts of subject matter jurisdiction over ADEA claims); Melendez v. Sebelius, 611 Fed.Appx. 762, 764 (4th Cir. 2015) (affirming district court's dismissal of federal employee's claims under Title VII, the Americans with Disabilities Act, and the Rehabilitation Act, because her failure to exhaust her administrative remedies deprived the district court of subject matter jurisdiction).[4] At this time, therefore, the court lacks subject matter jurisdiction to adjudicate the claims set forth in Pugh's second and third EEO complaints, foreclosing his ability to amend his complaint. Indeed, for Pugh to eventually litigate these claims in a federal district court, he must cooperate with the ongoing administrative process he has set in motion. His failure to do so will "preclude[ ] the possibility of exhaustion by preventing a determination by the administrative judge on the merits of [his] claims." Melendez, 611 Fed.Appx. at 764 (citations omitted).

Likewise, Pugh cannot circumvent the exhaustion requirement by arguing that he presented these claims in his first EEO complaint. While Pugh's two sets of allegations seek to vindicate similar legal rights, they differ factually. Pugh's first EEO complaint centered on the actions of Kurian and Fekrat from June through October 2012. Pugh's second and third EEO complaints, on the other hand, allege discrimination, harassment, and retaliation by Yarborough and Kager from October 2015 through January 2016. These differences are fatal to his present motion, as the scope of Pugh's right to file this federal lawsuit is determined by the contents of his first EEO complaint. See Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996) ("Only those discrimination claims stated in the initial charge, those reasonably re-

---

3. The ORM completed its investigation of Pugh's second EEO complaint on January 27, 2017 (Doc. 20–7 at 3), more than 180 days after he filed it on March 3, 2016 (Doc. 20–5).

4. The Fourth Circuit does not ordinarily accord precedential value to its unpublished decisions, which "are 'entitled only to the weight they generate by the persuasiveness of their reasoning.'" Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (quoting Hupman v. Cook, 640 F.2d 497, 501 & n.7 (4th Cir. 1981)).

lated to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.").[5]

While Pugh may now wish to skip the EEOC review that he previously requested, he must first exhaust his administrative remedies. Indeed, as the Supreme Court has explained "exhaustion requirements are designed to deal with parties who do not want to exhaust." Woodford v. Ngo, 548 U.S. 81, 90, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).

## III. CONCLUSION

For the reasons set forth above, therefore, IT IS ORDERED that Pugh's motion to deem his motion to amend as timely filed (Doc. 19) is GRANTED and his motion to amend (Doc. 17) is DENIED.

---

5. Pugh advances two retaliation claims in his second EEO complaint, alleging that Yarborough and Kager retaliated against him for prior EEOC activity. (Doc. 20-5 at 3–5.) Because Pugh alleges that his supervisors retaliated against him because of his first EEO complaint, these charges are reasonably related to the claims set forth in that complaint, which are before this court. Of course, Pugh could have filed these retaliation claims in this court without first subjecting them to administrative review. Jones v. Calvert Grp., Ltd., 551 F.3d 297, 302 (4th Cir. 2009) (exhaustion requirements do not apply to retaliation claims that are reasonably related to an earlier EEOC filing). However, because Pugh submitted all of the claims set forth in his second EEO complaint—which include his retaliation claims but also several non-retaliation claims—the EEOC must first resolve all of those claims before this court can exercise jurisdiction. "Otherwise, [a plaintiff] would be required to return to the EEOC and exhaust her administrative remedies with respect to her discrimination claim, while proceeding with litigation on her retaliation claim. Permitting simultaneous proceedings such as these for the same inciting event would thwart the administrative process and peremptorily substitute litigation for conciliation." Simmons–Myers v. Caesars Entm't Corp., 515 Fed.Appx. 269, 274 (5th Cir. 2013) (citations omitted).